UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Charles Wiskirchen,

               Plaintiff,               Court File No. 15-cv-3215 (ADM/LIB)

v.                           **ORDER AND**
                                      **REPORT AND RECOMMENDATION**

Dr. Resto, et al.,

               Defendants.

This matter is before the undersigned United States Magistrate Judge upon Defendants' Motion to Dismiss, [Docket No. 28], Plaintiff Charles Wiskirchen's ("Plaintiff") Motion to Compel Service, [Docket No. 37], and Plaintiff's Motion for an Order. [Docket No. 46]. The case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For reasons discussed herein, the Court **DENIES** Plaintiff's Motion to Compel Service, [Docket No. 37]; recommends that Plaintiff's Motion for an Order, [Docket No. 46], be **GRANTED**; and recommends that Defendants' Motion to Dismiss, [Docket No. 28], be **GRANTED in part and DENIED in part**.

I.    **BACKGROUND AND STATEMENT OF FACTS**

On August 5, 2015, Plaintiff initiated this action by filing a pro se Complaint, [Docket No. 1], alleging that Defendants Dr. Nader Peikar, Dr. William Resto-Rivera, and Dr. Sheila Woodard[1] had failed to provide Plaintiff with proper medical care while he was incarcerated at the Federal Correctional Institution located in Forrest City, Arkansas, and that Defendant Dr.

---

[1] Plaintiff's Complaint improperly refers to the Defendants as Dr. Piecard, Dr. Resto, Dr. Woodward, and Dr. Rice. Defendants, however, provided their correct names and the Court uses those names throughout this Order and Report and Recommendation.

Benjamin Rice had failed to provide Plaintiff with proper medical care while he was incarcerated at the Federal Correctional Institution located in Duluth, Minnesota. (Compl. [Docket No. 1]). On May 23, 2016, with the prior approval of this Court, Plaintiff filed an Amended Complaint, [Docket No. 20], clarifying that he was attempting to bring a Bivens[2] action and adding the United States of America as a direct Defendant. (Amended Compl. [Docket No. 20]).

Plaintiff generically alleges that collectively Defendants were deliberately indifferent to his medical needs. (Amended Compl. [Docket No. 20]). Plaintiff alleges that prior to his incarceration he was in an automobile accident which resulted in serious injuries to his back and legs. (Id. at ¶ 1).[3] Those injuries required surgery to prevent permanent damage to Plaintiff's leg which without correction would result in "drop foot." (Id. at ¶ 1).[4] Plaintiff alleges that, once he was in the custody of the United States Marshal, he was taken to various facilities throughout the Midwest for temporary treatment; including treatment at the Mayo Clinic in Rochester, Minnesota. (Id. at ¶¶ 2–3). Plaintiff avers the Mayo Clinic physicians recommended that "as soon as plaintiff was sentenced, he should be operated on, and . . . plaintiff should be in fact sentenced as soon as possible so that the surgery could be performed so further injury did not take place[.]"(Id. at ¶ 3).

Plaintiff contends that Defendants ignored the suggestions of the Mayo Clinic despite the fact that "it was the United States who[] [had] caused plaintiff to be first evaluated by the Mayo Clinic[.]" (Id. at ¶ 4). Moreover, Plaintiff alleges that "some of the defendants even misrepresented that Plaintiff had no injuries that had not been corrected though surgery." (Id. at

---

[2] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[3] Plaintiff's Amended Complaint, [Docket No. 20], fails to provide any dates for any of these allegations.

[4] "Footdrop" is defined as the "dropping of the foot from peroneal or tibial nerve lesion that causes paralysis of the leg." Daniel Albert, et al., Dorland's Illustrated Medical Dictionary 728 (32d ed. 2012). Plaintiff uses the term "foot drop" and drop foot" interchangeably, but it appears to in fact be referencing the term "footdrop."

¶ 5). Plaintiff alleges Defendants' failure to comply with the recommendation for surgery has resulted in permanent injury, including his "foot drop." (Id. at ¶ 6).

Plaintiff also alleges that at every level of his care he has advised each physician that he was having severe pain and that he would like the leg operation as soon as possible to alleviate the pain and to possibly prevent any permanent damage. (Id. at ¶ 7). Plaintiff alleges that "each physician promised that plaintiffs' [sic] injury would be treated and surgery would take place as soon as possible, but for many years [it] did not and for years plaintiff suffered with this severe pain[.]" (Id. at ¶ 7). Plaintiff asserts that instead of abiding by the recommendation for surgery, "[e]ach defendant would make their own determination as to what corrective surgery . . . would take place, and would have their own testing done at either the prison or plaintiff would be sent to a local medical centers" rather than the recommendation given by the Mayo Clinic resulting in Plaintiff's severe "anguish and pain." (Id. at ¶ 8). Plaintiff alleges that Defendants Peikar, Resto-Rivera, and Woodard each told Plaintiff that "after the time for [his] surgery is completed on [his] shoulder, [his] back and leg will take place shortly thereafter," but that ultimately, Defendants Peikar, Resto-Rivera, and Woodard each refused to comply with the Mayo Clinic's surgical recommendation. (Id. at ¶¶ 9–11, 15). As noted above, Defendants Peikar, Resto-Rivera, and Woodard were involved in Plaintiff's medical treatment while he was incarcerated at the Federal Correctional Institution located in Forrest City, Arkansas. (Compl., [Docket No. 5], at 5).

Plaintiff also alleges that Defendant Rice caused Plaintiff pain and suffering by removing him from his pervious morphine prescription upon his transfer to the Federal Prison Camp located in Duluth, Minnesota. (Amended Compl., [Docket No. 20], at ¶ 12). Plaintiff maintains that Defendant Rice took this action prior even to interviewing Plaintiff or reviewing Plaintiff's file. (Id.). Plaintiff further alleges that Defendant Rice has refused to reinstate Plaintiff's

morphine prescription, and that Rice told him that he will never receive it again "regardless of the amount of pain plaintiff was suffering." (Id. at ¶ 29).

Plaintiff asserts that due to the actions of each Defendant he now experiences falls, trips, and is in constant and severe pain. (Id. at ¶ 14).

On July 15, 2016, Defendants' filed their Motion to Dismiss. [Docket No. 28]. On July 19, 2016, the Undersigned issued an Order allowing Plaintiff until August 5, 2016, to respond to Defendants' motion to dismiss and allowing Defendants fourteen days thereafter to reply to Plaintiff's response. (Order [Docket No. 36]).

On August 8, 2016, Plaintiff filed a Motion to Compel Service and for Extension of Time to File Reply to Motion to Dismiss. (Motion [Docket No. 37]). That motion sought an order from this Court Compelling the United States Marshal to perfect service of process on the Defendants and an extension of the time in which Plaintiff was to file his response to Defendants' motion. (Plf.'s Motion [Docket No. 37]). On August 16, 2016, the Undersigned granted in part and denied in part Plaintiff's request for an extension of time to respond to Defendants' motion to dismiss allowing Plaintiff until September 23, 2016 in which to respond to Defendants' motion. (Order [Docket No. 43]). That Order also informed the parties that the Court would take the portion of Plaintiff's motion seeking compulsion of service under advisement at the same time it took Defendants' Motion to Dismiss, [Docket No. 28], under advisement. (Order [Docket No. 43]).

On September 9, 2016, Plaintiff filed a Motion, [Docket No. 46], seeking an order of the Court dismissing the present action as "against the United States and Federal Bureau of Prisons," denying Defendants' motion to dismiss, directing the United States Attorney to disclose Defendants' addresses, and allowing Plaintiff to proceed with this action. On September 9, 2016,

4

Plaintiff also timely filed a memorandum in opposition to Defendants' motion to dismiss. (Plf.'s Mem. [Docket No. 48]).

Defendants' filed their Reply on October 7, 2016. (Defs.' Reply [Docket No. 59]).[5]

On October 27, 2016, Plaintiff filed an untimely, second memorandum in opposition to Defendants' motion to dismiss. (Plf.'s Second Mem. [Docket No. 60]). Accompanying that second memorandum, Plaintiff filed as an exhibit a letter from Assistant United States Attorney Ana H. Voss to Plaintiff. (Exhibit [Docket No. 61]).

## II. PLAINTIFF'S MOTION FOR AN ORDER. [DOCKET NO. 46].

Plaintiff's Motion, [Docket No. 46], in part, seeks an Order of this Court dismiss the present action against "the United States and Federal Bureau of Prisons." (Mot. [Docket No. 46]). Plaintiff's request appears to be an attempt to voluntarily dismiss certain Defendants from the present action. (See, Id.). This interpretation of Plaintiff's motion is supported by Plaintiff's statement in his responses to Defendants' motion to dismiss in which he asserts that the United States has been dismissed from this action. (Plf.'s Second Mem. in Opposition, [Docket No. 60], at 2) ("Plaintiff has dismissed the claims against the United States"). Therefore, the Court construes Plaintiff's motion, in his favor, as a notice of dismissal seeking voluntary dismissal of the United States without prejudice.[6]

---

[5] On September 13, 2016, Defendants sought an extension of time in which to reply to Plaintiff's response to Defendants' motion to dismiss. (Defs.' Mot. [Docket No. 51]). On September 15, 2016, the Undersigned granted Defendants' motion seeking an extension of time in which to reply, allowing Defendants until October 10, 2016, to reply. (Order [Docket No. 56]).

[6] To the extent Plaintiff motion was intended to be a notice of voluntary dismissal of the Federal Bureau of Prisons that notice is unnecessary as the Federal Bureau of Prisons is not a defendant in the present case. (See, Amended Compl. [Docket No. 20]). To the extent Plaintiff's motion sought an Order denying Defendants' Motion to Dismiss, [Docket No. 28], as premature or an Order allowing Plaintiff to proceed in the present action for that same reason those requests are conclusory arguments against Defendants' motion not grounds for a separate motion or Order. Even Plaintiff's request that the Court order the United States Attorney to disclose the addresses of Defendants is duplicative of the arguments Plaintiff raised in his memorandum in opposition to Defendants' Motion to Dismiss, [Docket No. 28], and in Plaintiff's Motion to Compel Service. [Docket No. 37]. As such, the Court interprets those assertions as duplicative arguments raised in Plaintiff's other pending motions and not as separate motions.

Rule 41(a)(1) permits a plaintiff to voluntarily dismiss any court action when no answer or a motion for summary judgement has been filed. Fed. R. Civ. P. 41(a)(1)(A)(i). Neither an answer nor a motion for summary judgment has been filed by any Defendant in the present case.

Therefore, based on the foregoing, and all the files records, and proceedings herein, the Court recommends that Defendant the United States of America be **DISMISSED without prejudice**.

### III. DEFENDANTS' MOTION TO DISMISS. [DOCKET NO. 28].

In support of their Motion to Dismiss, [Docket No. 28], Defendants contend dismissal is appropriate, arguing 1) some of the Defendants are immune from suit; 2) Plaintiff has failed to exhaust his administrative remedies with regard to some of his claims; 3) this Court lacks personal jurisdiction over the Defendants; 4) Plaintiff has failed to properly effect service of process; and 5) Plaintiff has failed to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6).

For the following reasons, the Court recommends that the Defendants' Motion to Dismiss, [Docket No. 28], be **GRANTED in part** and **DENIED in part**.

**A. Standard of Review**

When evaluating a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir 1998)), cert. denied 525 U.S. 1178 (1999). Courts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F. 3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be

sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57). When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81.

While the Court is required to construe the content with Plaintiff's pleadings liberally as he is proceeding *pro se*, Plaintiff is nevertheless bound by applicable procedural and substantive law. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

**B. Analysis**

"A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors." Aldaco v. Holder, No. 10-cv-590 (JRT/LIB), 2011 WL 825624, at *3 (D. Minn. Jan. 7, 2011) (citing Bivens, 403 U.S. at 395–97). "A Bivens claim allows a plaintiff to bring an action for money damages against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. A

plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law." Id. at *3.

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on persons convicted of crimes. See, Rhodes v. Chapman, 425 U.S. 337, 344–46 (1981). Any "deliberate indifference to serious medical needs of prisoners" constitutes cruel and unusual punishment, and therefore, violates the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation and citation omitted); see also, Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference from serious medical needs") (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

To demonstrate the "deliberate indifference" necessary for pleading an Eighth Amendment violation, a prisoner must show (1) that he had an objectively severe medical need, and (2) that prison officials knew of, but deliberately disregarded, that need. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir.1995).

"Deliberate indifference is akin to criminal recklessness." Drake v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006). Accordingly, Plaintiff must plead "more than negligence, more even than gross negligence . . . ." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). "Specifically, the prisoner must show both (1) that a prison official had actual knowledge that the

prisoner's medical condition created a substantial risk of serious harm to the prisoner's health, and (2) that the prison official failed to act reasonably to abate that risk." Baez v. Rosemack, No. 09-cv-2121 (RHK/LIB), 2011 WL 4062586, at *4 (D. Minn. Aug. 9, 2011) (Brisbois, M.J.) (citing Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997)).

Before addressing whether or not Plaintiff's Complaint alleges an Eighth Amendment violation claim upon which relief may be granted, the Court addresses some preliminary issues relative to some of the various Defendants.

### 1. Defendant the United States of America

Defendants first argue the Defendant the United States enjoys sovereign immunity from suit which has not been waived or abrogated, and in any event, that Defendant the United States cannot be liable for constitutional violations under the theory of respondeat superior as Plaintiff alleges. (Defs.' Mem. [Docket No. 30], at 7–8). As discussed above, however, Plaintiff has now voluntarily dismissed Defendant the United States of America rendering Defendants' argument here moot.

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 28], seeks an Order dismissing Defendant the United States of America from the present action, the Court recommends the motion be **DENIED as moot**.

### 2. Defendant Resto-Rivera

Plaintiff alleges that Defendant Resto-Rivera violated his right under the Eighth Amendment by being deliberately indifferent to his need for surgery after that surgery had already been recommended by physicians at the Mayo Clinic. (See, Amended Compl. [Docket No. 20], at ¶¶ 4–8, 11, 13–16). Defendant Resto-Rivera asserts that he is a commissioned officer

with the U.S. Public Health Services (PHS), and therefore, he argues that he has absolute immunity from liability in the present action. (Defs.' Mem., [Docket No. 30], at 8–9).

In support of his assertion that he is a commissioned officer with the U.S. PHS, Defendant Resto-Rivera filed a sworn declaration along with Defendants' motion to dismiss. (Resto-Rivera Decl. [Docket No. 32]). That declaration provides that Defendant Resto-Rivera has been a commissioned officer in the PHS since August 1993, and he was previously at the Federal Correctional Institution located in Forrest City, Arkansas, from October 2011, until March 2014. (Id.). The declaration further provides that at all times relevant to the present action, all of Defendant Resto-Rivera's "actions with regard to Plaintiff were done in the performance of a medial or related function within the scope and course of [his] employment." (Id.).

In response to Defendant Resto-Rivera's argument that he is a PHS employee and therefore immune from liability, Plaintiff only asserts that while "[i]t is clear from the affidavit of [Defendant Resto-Rivera] that he is a commissioned officer of the Public Health Services[,]" the immunity he is afforded "does not transfer with him when he is acting outside of the Department of Public Health[.]" (Plf.'s Second Mem. in Opposition, [Docket No. 60], at 2). Plaintiff fails to provide any factual or legal support for his assertion that Defendant Resto-Rivera has somehow lost his immunity from liability or was acting outside of his duties as a PHS officer. (See, Id.).

In Hui v. Castaneda, the Supreme Court, reversing the denial of a motion to dismiss, held that PHS employees are immune from Bivens claims arising from the performance of their job-related medical duties. 599 U.S. 799 (2010). The Court explained that:

> This case presents the question whether 42 U.S.C. § 233(a) . . . precludes an action under Bivens, . . . against U.S. Public Health Service (PHS) personnel for constitutional violations arising out of their official duties. When federal employees are sued for damages for harms caused in the course of their

employment, the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680, generally authorizes substitution of the United States as the defendant. Section 233(a) makes the FTCA remedy against the United States 'exclusive of any other civil action or proceeding' for any personal injury caused by a PHS officer or employee performing a medical or related function 'while acting within the scope of his office or employment.' Based on the plain language of § 233(a), we conclude that PHS officers and employees are not personally subject to Bivens actions for harms arising out of such conduct.

Id. at 801–02. See also, Bransgaard v. U.S. Bureau of Prisons Health Service Staff, No. 5:11–CT–3122–FL, 2012 WL 3732822 at *7 (E.D.N.C. 2012) (providing that 42 U.S.C. § 233(a) "protects commissioned Public Health Service officers and employees from being subject to suit 'for damage for personal injury . . . resulting from the performance of medical, surgical, dental, or related functions'") (quoting Hui, 599 U.S. at 805).

As noted above, Defendant Resto-Rivera submitted a declaration stating that, at the time he provided medical treatment to Plaintiff at the Federal Correctional Institution located in Forrest City, Arkansas, he was a commissioned officer in the United States Public Health Service. (Resto-Rivera Decl. [Docket No. 32]). Plaintiff's factual allegations in his Complaint regarding Defendant Resto-Rivera are general, and those allegations provide no factual basis upon which this Court could reasonably infer that Defendant Resto-Rivera was taking any actions other than performing a medical function in the course and scope of his employment. Accordingly, even if Plaintiff's allegations of deliberate indifference regarding Defendant Resto-Rivera were true, Defendant Rest-Rivera, as a commissioned officer of the PHS, is entitled to absolute immunity pursuant to § 233(a) because he is being sued based upon his performance of a medical function.

Therefore, to the extent Defendants' Motion to Dismiss, [Docket No. 28], seeks an Order dismissing Defendant Resto-Rivera from the present action, the Court recommends the motion be **GRANTED**.[7]

### 3. Defendants Peikar and Woodard

Plaintiff alleges that Defendants Peikar and Woodard violated his right under the Eighth Amendment by being deliberately indifferent to his need for surgery after that surgery had already been recommended by physicians at the Mayo Clinic. (See, Amended Compl., [Docket No. 20], at ¶¶ 4–10, 13–16). Defendants Peikar and Woodard argue that Plaintiff's Amended Complaint, as asserted against them, should be dismissed as this Court lack personal jurisdiction over them and Plaintiff has failed to properly serve them. (Defs.' Mem., [Docket No. 30], at 9–15).

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th Cir. 2011) (internal quotation marks and citations omitted). The evidentiary showing required at the prima facie state is minimal and is determined by considering the pleadings and the affidavits and exhibits relating to the motion. Id. at 592 (citing Dever v. Hentzen Coating, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). The Court views "the evidence in the light most favorable to the plaintiff and resolve[s] all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." Id. (citation omitted).

---

[7] As the Court finds Defendant Resto-Rivera is absolutely immune from suit, the Court does not reach Defendant Resto-Rivera's alternative arguments for dismissal.

Courts use a two-step analysis to determine whether a court may properly exercise personal jurisdiction over a defendant. Myers v. Unknown Unidentified Mailroom Pers. of Bureau of Prisons Mailroom Staff at FCI-Englewood, 13-cv-3644 (PAM/JJK), 2014 WL 2818669, at *2 (D. Minn. June 18, 2014) (citing Northrup King v. Compania Productora Semillas, 51 F.3d 1383, 1387 (8th Cir. 1995)). The Court first considers whether personal jurisdiction is proper under the law of the forum state, specifically "whether jurisdiction exists under the state's 'long-arm statute.'" Id. "Second, the court's exercise of jurisdiction must be consistent with the due process clause of the Fourteenth Amendment." Id. In Minnesota, "[t]hese two inquiries collapse into one . . . because Minnesota's long-arm statute extends jurisdiction to the outer limits of the Due Process Clause." Lexion Med., LLC v. SurgiQuest, Inc., 8 F. Supp. 3d 1122, 1126 (D. Minn. 2014) (citations omitted).

"Due process requires that the defendant purposefully establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend 'traditional conceptions of fair play and substantial justice.'" K-V Pharm. Co., 648 F.3d at 592 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464 (1985)). A "defendant must have engaged in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" K-V Pharm. Co., 648 F.3d at 592 (quoting Burger King Corp., 471 U.S. at 475). "This purposeful-availment requirement is met where the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Id.

The Eighth Circuit has identified factors the Court must consider when determining if an individual has sufficient minimum contacts with a forum State:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.

Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010). "The first three factors are primary factors, and the remaining two are secondary factors[.]" Id. The Court, however, examines all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists. Id.

Plaintiff's Amended Complaint, [Docket No. 20], does not asserts the domicile of Defendant Peikar or Defendant Woodard. Defendants Peikar and Woodard assert that they are not residents of Minnesota. (Defs.' Mem., [Docket No. 30], at 10). Plaintiff has offered no evidence that either Defendant Peikar or Defendant Woodard are residents of Minnesota. The Amended Complaint also fails to allege where Defendant Peikar or Defendant Woodard provided Plaintiff medical treatment. (See, Id.). Other documents filed by Plaintiff demonstrate that Defendant Peikar and Defendant Woodard were only involved in Plaintiff's medical care at the Federal Correctional Institution located in Forrest City, Arkansas. For instance, in his original Complaint, Plaintiff alleged that "Dr. Piecard [sic], Dr. Resto [sic], and Dr, Woodward [sic] deviated from the surgery schedule as the BOP had errored in not sending me back to the Mayo Clinic for surgery, but had designated me at Forrest City, Arkansas wher [sic] [Plaintiff] remained for more [than] four (4) years, and had no surgery at all." (Compl., [Docket No. 1], at 5–6). In a memorandum filed with his original Complaint, Plaintiff asserted that he "was eventually taken to Forrest City, Arkansas, and was during the four and a half years treated by Doctor's [sic] Piecard [sic], Resto [sic], and Woodward [sic][.]" (Plf.'s Mem., [Docket No. 2], at ¶ 5). Moreover, in an affidavit in support of that Memorandum, Plaintiff attested "[t]hat none of the recommendations of the Rochester Medical Clinic have been followed by the Doctors named above from the Arkansas Prisons, and in fact they thereafter had Plaintiff reevaluated and failed

to follow the evaluations or recommendations of the doctors who had evaluated Plaintiff in Arkansas." (Plf.'s Aff., [Docket No. 3], at ¶ 5).

On the present record, from Plaintiff's own submissions, it is clear to the Court that Defendants Peikar and Woodard were only involved in Plaintiff's medical treatment at the Federal Correctional Institution located in Forrest City, Arkansas, and there is no evidence (nor even any allegations) that they had any contacts whatsoever with the State of Minnesota. Plaintiff fails to offer any basis on which to conclude that Defendant Peikar or Woodard had any contact with the State of Minnesota.

None of the relevant personal jurisdiction factors indicate that Defendant Peikar or Woodard could have reasonably anticipated being summoned into court in Minnesota by being involved in Plaintiff's medical treatment at the Federal Correctional Institution located in Forrest City, Arkansas. See, Weldon v. Ramstad-Hvass, 512 Fed. App'x 783 (10th Cir. 2013). Therefore, this Court does not have personal jurisdiction over Defendant Peikar or Defendant Woodard.

For the foregoing reason, the Court recommends that, to the extent the Defendants' Motion to Dismiss, [Docket No. 28], pertains to Plaintiff's claims against Defendant Peikar and Defendant Woodard, the motion be **GRANTED**.

### 4. Defendant Rice

Plaintiff alleges that Defendant Rice violated his rights under the Eighth Amendment by being deliberately indifferent to his medical need by discontinuing his morphine prescription upon Plaintiff's transfer to and arrival at the Federal Prison Camp located in Duluth, Minnesota. (See, Amended Compl., [Docket No. 20], at ¶¶ 5, 12–13, 29). Defendant Rice argues that

Plaintiff has failed to present or exhaust all his administrative remedies with respect to Defendant Rice's conduct at the Federal Prison Camp Duluth. (Defs.' Mem., [Docket No. 30], at 15–18).

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners must exhaust all of their available administrative remedies before they can bring a civil rights action based on the conditions of their imprisonment. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," Porter v. Nussle, 534 U.S. 516, 524, 532 (2002), regardless of the nature of the claim or the relief the prisoner is seeking. See, Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion under the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90–91 (2006). In other words, "proper exhaustion" of administrative remedies, "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issue on the merits)." Id. at 90 (quotation and marks omitted).

If it is established that exhaustion of administrative remedies did not occur prior to filing of a law suit, both the United States Supreme Court and the Eighth Circuit have made it clear that dismissal is mandatory. Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion [of administrative remedies] is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); Woodford, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."); Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003) (finding that if a prisoner does not exhaust his administrative remedies before filing a complaint in federal court, "dismissal is mandatory," and even if a prisoner subsequently

satisfies the exhaustion requirement while his action is still pending, the case must still be dismissed).

"The Bureau of Prisons (BOP) has a multi-step process for inmates to use in bringing complaints about any aspect of their confinement: an informal resolution, an administrative remedy (with the warden), an appeal to the BOP's regional director, and finally an appeal to the BOP's central office. There are deadlines for each step." Marlin v. Marquez, 218 Fed. App'x 545, 545 (8th Cir. 2007) (citing 28 C.F.R. § 542.10 to .18). There is nothing alleged in the present pleadings to indicate that Plaintiff ever even attempted to avail himself of the BOP system with regard to his claims against Defendant Rice.[8] Defendants submitted the declaration of Shannon Boldt[9] attesting that records show that while Plaintiff has filed nine administrative remedies during his incarceration, he has not filed an administrative remedy since he was transferred to the Federal Prison Camp located in Duluth, Minnesota. (Boldt Decl., [Docket No. 33], at ¶¶ 14–23). Plaintiff has thus failed to plead any factual allegations upon which this Court could reasonably infer that he had exhausted his administrative remedies related to his claims against Defendant Rice before he initiated the present legal action. As noted above, dismissal of unexhausted Bivens claims is mandatory. Id.

Therefore, the Court recommends that, to the extent the Defendants' Motion to Dismiss, [Docket No. 28], pertains to Plaintiff's claims against Defendant Rice, the motion be

---

[8] While Plaintiff makes several general assertions that he has exhausted his administrative remedies as to other Defendants, Plaintiff makes no specific assertion that he has exhausted his administrative remedies as to Defendant Rice. In his Amended Complaint, [Docket No. 20], Plaintiff asserts only that he "has filed his administrative procedure act appeals, and has lost all of the way through, based upon the defendants Peikar, [sic] Resto[,][sic]and Woodards [sic] misrepresentation to the Administration so that they would win, as they did with their deliberate misrepresentations and fabrications," but Plaintiff makes no assertion that he has exhausted, or even began, his administrative remedies related to his claims against Defendant Rice. (See, Amended Compl. [Docket No. 20]).

[9] Shannon Boldt is employed by the United States Department of Justice, Federal Bureau of Prisons, as a paralegal specialist for the Consolidated Legal Center for Minnesota, which handles all litigation for the institutions in Minnesota. (Boldt Decl., [Docket No. 33], at ¶1).

17

**GRANTED** and Plaintiff's Amended Complaint, [Docket No. 20], be **DISMISSED without prejudice**.

## IV. PLAINTIFF'S MOTION TO COMPEL SERVICE. [DOCKET NO. 37].

As noted above, Plaintiff moves this Court for an Order compelling the United States Marshal to perfect personal service on each of the individually named Defendants. (Plf.'s Mot. to Compel Service [Docket No. 37]).

However, since the Court recommends dismissing the present action in its entirety, Plaintiff's Motion to Compel Service, [Docket No. 37], is mooted, by the present report and recommendation if adopted. As such, the Court **DENIES as moot** Plaintiff's Motion to Compel Service. [Docket No. 37].

## V. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Compel Service, [Docket No. 37], is **DENIED**.

**IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Notice of Voluntary Dismissal, [Docket No. 46], be **GRANTED** as set forth above;

2. Defendants' Motion to Dismiss, [Docket No. 28], be **GRANTED in part** and **DENIED in part**, as set forth above; and

3. Plaintiff's Amended Complaint, [Docket No. 20], be **DISMISSED without prejudice**.

Dated: January 25, 2017          s/ Leo I. Brisbois
        The Honorable Leo I. Brisbois
        United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.